IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALEX DAYTON,<br><br>        Plaintiff,<br><br>v.<br><br>KAREN HIGDON,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 3)**<br><br>Case No. 2:18-cv-00355-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Defendant Karen Higdon moves the Court[1] to dismiss Plaintiff Alex Dayton's Complaint (ECF No. 2-1) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. (Def.'s Mot. to Dismiss ("Mot."), ECF No. 3.) Ms. Higdon argues she lacks sufficient contact with Utah for the Court to exercise personal jurisdiction over her. (Id. at 3–8.) Mr. Dayton brings claims against Ms. Higdon for breach of contract, unjust enrichment, and conversion and civil conspiracy to commit conversion. (Compl. ¶¶ 21–40, ECF No. 2-1.) He contends Ms. Higdon voluntarily and purposefully directed her activities at him when she "reached out to submit a proposal for services", and she knew or should have known that he resided in Utah. (Mem. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n") 2-3, 5, ECF No. 16.) Additionally, after Mr. Dayton accepted Ms. Higdon's proposal, Mr. Dayton contends Ms. Higdon performed services for him on a "sustained" basis for approximately twenty-six months. (Id. at 2.)

---

[1] On May 17, 2018, the parties consented to the exercise of jurisdiction by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). (ECF No. 15.)

1

Having considered the parties' briefing, supporting affidavits, oral argument, and the law, the Court GRANTS Ms. Higdon's Motion to Dismiss because Mr. Dayton failed to make a prima facie showing that Ms. Higdon had sufficient minimum contacts with the State of Utah to exercise jurisdiction.

## I. LEGAL STANDARD

" 'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.' " Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1295 (10th Cir.1999) (quoting Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995)). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.' " Walden v. Fiore, 571 U.S. 277, 283, (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Under Utah's long-arm statute, transacting business within or contracting to supply services in the state subjects a person to jurisdiction within the state. Utah Code Ann. § 78B-3-205(1)-(2). Utah further confers the maximum jurisdiction "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code. Ann. § 78B-3-201(3). Therefore, the Court must determine whether exercising personal jurisdiction over Ms. Higdon "comports with the limits imposed by federal due process." Walden, 571 U.S. at 283 (quoting Daimler AG v. Bauman, 571 U.S. 117, 125 (2014)).

The Due Process Clause permits assertion of personal jurisdiction only when the defendant has sufficient " 'minimum contacts' " with the state, so that the exercise of jurisdiction would "not offend 'traditional notions of fair play and substantial justice.' " Helicopteros Nacionales v. Hall, 466 U.S. 408, 414 (1984) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (quoting Int'l Shoe, 326 U.S. at 319). A court can satisfy the "minimum contacts" standard either through specific or general jurisdiction. OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1090-91 (10th Cir. 1998).

In this case, Mr. Dayton conceded at oral argument that the Court could not maintain general jurisdiction over Ms. Higdon. Accordingly, the Court reviews Ms. Higdon's contacts with Utah to determine whether it can exercise specific jurisdiction over Ms. Higdon and whether that exercise offends due process. See id.,149 F.3d at 1091. A court may assert specific jurisdiction over a defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, …, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 & Helicopteros, 466 U.S. at 414).

The specific jurisdiction inquiry has two stages. First, the court determines "whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.' " OMI Holdings,149 F.3d at 1091

3

(quoting World–Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1979)). The test to determine whether the defendant has established such minimum contacts has two subparts. First, the court considers whether the defendant " 'purposefully directed' his activities at residents of the forum." Burger King, 471 U.S. at 472 (quoting Keeton, 465 U.S. at 774). Next, the court considers "whether the plaintiff's claim arises out of or results from 'actions by the defendant himself that create a substantial connection with the forum state.' " OMI Holdings, 149 F.3d at 1091 (emphasis in original) (quoting Asahi Metal Indus. Co. v. Super. Ct., 480 U.S. 102, 109 (1987)).

If the defendant's actions meet the specific jurisdiction test, the court moves on to consider "whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice.' " OMI Holdings, 149 F.3d at 1091 (quoting Asahi, 480 U.S. at 113). The Tenth Circuit cites approvingly Ticketmaster-New York, Inc. v. Alioto, which describes the interplay between the two stages of the personal jurisdiction analysis:

> We think ... that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].

OMI Holdings, 149 F.3d at 1092 (alterations in original) (quoting Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)).

## II.   FACTUAL BACKGROUND

" 'The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only

4

make a prima facie showing.' " Ten Mile Indus. Park v. W. Plains Serv. Corp., 810 F.2d 1518, 1524 (10th Cir. 1987) (quoting Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984)). " 'The plaintiff may make this prime facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.' " AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1057 (10th Cir. 2008) (quoting OMI Holdings, 149 F.3d at 1091). " 'The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.' " Kennedy v. Freeman, 919 F.2d 126, 128 (10th Cir. 1990) (quoting Behagen, 744 F.2d at 733). However, the plaintiff must come forward with "competent proof of the supporting facts." Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989) (citing Becker v. Angle, 165 F.2d 140, 141 (10th Cir. 1947)).

Taking the unchallenged allegations of the Complaint as true, the prima facie personal jurisdiction facts are as follows. Plaintiff Alex Dayton maintains citizenship in Utah (Compl. ¶ 1, ECF No. 2-1), while Defendant Karen Higdon maintains citizenship in Arkansas (Aff. of Karen Higdon ("Higdon Aff.") ¶ 8, Ex. B., ECF No. 13–1). This action arises from an alleged breach of a service agreement relating to the sale of unspecified goods within an e-commerce store. (See generally Compl., ECF No. 2-1; Aff. of Alex Dayton, in Supp. of Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Dayton Aff.") ¶ 15, ECF No. 16 at 10.)

In response to the Motion to Dismiss, Mr. Dayton puts forth the following facts through affidavit and attachment, which the Court takes as true, even if contradicted by Ms. Higdon. "[T]he creation of the [a]greement commenced with a job posting that [Mr. Dayton] listed on the online outsourcing and contractor platform, Upwork.com." (Id. at ¶ 3.) The job posting identified the poster as morebetta.com and listed under "About the Client" review ratings, the number of job postings, money spent, the hourly rate, and other information including:

> **United States**
> Salt Lake City 09:07 A.M.

(Dayton Aff., Attach. 1 ("Job Posting"), ECF No. 16 at 13.) Ms. Higdon submitted a proposal to perform work in response to that job posting. (Dayton Aff., Attach. 2 ("Response to Job Posting"), ECF No. 16 at 16.)

Ms. Higdon performed services "in connection with the Upwork proposal and in connection with additional ancillary agreements reached informally by and between [Ms.] Higdon and [Mr. Dayton][2], on an ongoing basis." (Dayton Aff. ¶ 9, ECF No. 16 at 10.) Ms. Higdon "regularly reported the services she performed for me in connection with all of the agreements." (Id. at ¶ 10.) Mr. Dayton paid Ms. Higdon for her "Upwork and other contractual services … from [his] Utah bank accounts." (Id. at ¶ 14.) The parties maintained this format for working with each other "on an ongoing basis from November 2014 until … February 2017." (Dayton Aff. ¶ 9, ECF No. 16 at 10.)

Ms. Higdon puts forth the following uncontradicted facts in her affidavit. Ms. Higdon did not sign any service agreement. (Higdon Aff. ¶¶ 5, 9, 13, Ex. B., ECF No.

---

[2] Nowhere in the Complaint or Opposition to the Motion or in his Affidavit does Mr. Dayton explain his relationship to morebetta.com.

6

13-1.) Ms. Higdon does not have a physical business or physical residence in Utah, does not have any physical property or inventory in Utah, and does not "attempt to advertise in Utah in any form." (Id. at ¶¶ 3–4, 7, 10.) Ms. Higdon has not been to Utah, and she works alone, lacking "agents, partners, or employees who are residents or otherwise have contact with the state of Utah." (Id. at ¶¶ 6, 12.) Additionally, she did not cause the bank accounts from which she was paid to be opened nor did she give permission for anyone to open the accounts. (Id. at ¶ 11.)

### III. SPECIFIC PERSONAL JURISDICTION

Mr. Dayton argues specific jurisdiction exists over Ms. Higdon because she "specifically and particularly directed … her proposal for services" to him, "entered into a series of agreements" with him, and provided "ongoing services over a course of at least twenty-six months." (Opp'n 2, ECF No. 16.) Additionally, he contends Ms. Higdon "undertook the affirmative step of directing a proposal for services to a client who she knew or should have known to be a Utah client." (Id. at 3.)

Ms. Higdon asserts she lacks minimum contacts with Utah. (Mot. 5–6, ECF No. 3.) She further contends she has never been to Utah and does not maintain a residence or a business operation license in the state. (Id. at 6; Higdon Aff. ¶ 6, ECF No. 13-1.) Additionally, she states she never entered into an agreement in Utah that invokes Utah law, and she does not advertise or maintain any operations in the state. (Mot. 6, ECF No. 3.) She further argues the Complaint fails to establish personal jurisdiction over her because Mr. Dayton only alleges actions taken against him and does not allege actions directed to the state of Utah. (Id. at 6–8; Def.'s Reply Mem. in Supp. of Mot. to Dismiss ("Reply") 7, ECF No. 17.) Additionally, Ms. Higdon contends

7

Mr. Dayton fails to provide competent proof to establish Utah as the proper jurisdiction for the action. (Reply 9–10, ECF No. 17.) The Court finds Mr. Dayton fails to provide prima facie evidence of this Court's personal jurisdiction over Ms. Higdon.

"The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." Pytlik, 887 F.2d at 1376 (citing Becker, 165 F.2d at 141). As noted above, the Court must accept Mr. Dayton's allegations that he entered into multiple informal contracts with Ms. Higdon growing out of the mobetta.com contract as true. Kennedy, 919 F.2d at 128. However, the existence of the service agreement alone "does not subject a nonresident defendant to the jurisdiction of the subject forum." AST Sports, 514 F.3d at 1059 (citing Benton v. Cameco Corp., 375 F.3d 1070, 1077 (10th Cir. 2004) (citing Burger King, 471 U.S. at 473)).

Mr. Dayton fails to provide competent factual support to show Ms. Higdon had sufficient meaningful contacts with Utah. For example, the Complaint and the affidavit remain silent as to where Ms. Hidgon performed her alleged services. (See Compl., ECF No. 2-1; Dayton Aff., ECF No. 16 at 9–10.) Mr. Dayton states Ms. Higdon "regularly reported the services she performed for me in connection with all of the agreements," (Dayton Aff. ¶ 10, ECF No. 16), but "[i]t is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Far. W. Capital, Inc. v. Towne, 46 F.3d 1071, 1076 (10th Cir. 1995) (citing Cont'l Am. Corp. v. Camera Controls Corp., 692 F.2d 1309, 1314 (10th Cir. 1982) (quotation omitted)). Mr. Dayton never alleges he told Ms. Higdon he was in Utah, and the mobetta.com posting does not put anyone on notice about the citizenship of the

purported client, mobetta.com. Indeed, one of the touted benefits of the on-line economy is the ability to connect people without regard to geographical location. One cannot say that a contract entered and work performed without regard to geography reflects purposeful availment of the benefits of the forum.

Certainly, the case arises out the alleged contract. However, the allegations fail to put forth prima facie evidence of purposeful direction by Ms. Higdon. To the extent the allegations show any purposeful availment, those actions appear so minimal so as to make an exercise of jurisdiction unreasonable.

Therefore, the Court concludes Mr. Dayton fails to make a prima facie showing of this Court's personal jurisdiction over Ms. Higdon. Accordingly, the Court GRANTS Ms. Higdon's Motion to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Ms. Higdon's Motion to Dismiss for Lack of Personal Jurisdiction.

DATED this 28th day of March, 2019.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge